The next case for argument is Church of Jesus Christ of Latter-Day Saints v. National Union Fire Insurance Company, docket 25-4049. Counsel please proceed when you're ready. Thank you. Good morning, your honors, and may it please the court. My name is Haley Krug. I'm joined by my colleague, Justin Starr. We're with the law firm of Curtin-McConkie, counsel for the Church of Jesus Christ of Latter-Day Saints, which is the insured in this case, which is fundamentally about the interpretation of insurance policy language. In the court below, the district court made four clear errors in interpreting the policy's definitions of occurrence. Any one of these were warrant reversal by this court because they all run afoul of controlling Utah Supreme Court authority. First, the court failed to give effect to the plausible interpretation of the definitions of occurrence that was offered by the church. The court, in fact, did not apply the Utah Supreme Court's plausibility standard, which is required by its decision in SALA v. Farmers Insurance Exchange, Supreme Court of Utah from 2006. Second, the court adopted a definition of occurrence that itself violates Utah Supreme Court authority, again in the SALA case, because it adds words to the policy that are not there. Third, the court ultimately acknowledged that the language at issue in this case can have multiple meanings, is applied differently in different contexts in different cases by different courts and different parties. But it declined to find an ambiguity in that instance and declined to construe that ambiguity in favor of the church, which is also required by Utah Supreme Court authority. The case that we're citing for that is U.S. Fidelity and Guarantee Company v. Sant. That's a Utah Supreme Court case from 1993. And fourth, although the church does not believe the Utah Supreme Court would apply the Lee v. Interstate Test or Analysis Framework that the district court applied in this case, once the court selected that test, it was bound to look to evidence, facts in the record rather than allegations at the summary judgment stage to make a determination under Lee. It did not do that. It looked at allegations, and that's fundamentally improper. That's a Utah Supreme Court case as well called Therkelson from 2001, which says when you're determining indemnity under an insurance policy at summary judgment stage, you look at evidence. I want to turn to the all-important language of the policies here, because that is really what controls, it is really what the analysis needs to turn on, and it is how the district court got so far afield in this case. Both insurers' policies define occurrence as an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Both policies provide that all such exposure to substantially the same general harmful conditions will be deemed to arise out of one occurrence. That's deemer or batching language is what I call that. It tells us when we have a single occurrence. ACE's policies add language to that. They say also that that is true, the batching occurs regardless of the frequency or repetition thereof or the number of claimants. Now the church has offered an interpretation of this policy that it submits as plausible. It interprets the language to treat the alleged continuous and repeated failure of church officials to prevent the abuse of seven claimants by the same individual church member, Michael Jensen, as a single occurrence. The insurers and the district court would interpret this language to require that, quote, A separate occurrence arose every time Mr. Jensen abused separate children at separate times and in separate places. The bottom line question I'd issue here is simply, is the church's interpretation of the definition of occurrence reasonable? Is it plausible? Again, this question is a logical result of the two controlling principles of Utah law laid out in SELA and SANT. The first principle is that insurance policy interpretation exercises begin with an examination of the policy's language against the insured's profit interpretation. What the court did in SELA was look at the policy language, and it looked at the insured's profit interpretation right away, put them next to each other, and said, hey, is this one plausible in light of the language? That's what the court needed to do here. That's what the court did not do here. The court in SELA said- What language do you think they're adding? Their theory that there's a separate occurrence every time the abuser acted, what language do they add to get to that? I think that the court adds at least three things to the policy language. First, the district court's definition adds the words separate times into the definition of occurrence. The policy definitions do not say anything about timing. They ask for continuous or repeated conduct. I think it's important that's in the disjunctive. So repeated conduct that takes place over time, continuous conduct that takes place over time, is batched into a single occurrence under the policy language. The court here said, I'm looking at the separate times that these things occurred, and again, that's not language that's in the policy. The insured's and the district court's interpretation also read the words separate places into the definition of occurrence. The policy definitions say nothing about location. And in fact, the primary case that the court relied on, Lee v. Interstate, construed a definition of occurrence that was fundamentally different than the one we have at issue here because it batched a single occurrence exposures to dangerous conditions at the same location into one occurrence. It used that same location language. The court here applied a same location rule without same location language. Our policy does not have that language. And perhaps most egregiously, the insurer's and the district court's interpretation reads the words separate children into the definition of occurrence. And I think that one is the most problematic because ACE here in its policies did actually contemplate whether it wanted a separate occurrence for each claimant, and it chose policy language that expressly excludes different claimants or separate claimants as a factor in determining the number of occurrences. It says regardless of the number of claimants, we are going to batch like exposures together. I'm looking at the Lee definition of occurrence, and I agree with you that it says from one location, but I'm not sure why that matters. Why does that matter? It matters because the insurance company has an obligation to specify clearly its policy language, what's going to be covered and what's not going to be covered here. The language that the insurers chose says that all exposure to substantially the same general harmful conditions will be one occurrence. It does not say all such exposure at one location, all such exposure at one time, or all such exposure to one person. And yet, the court here, the district court, applied all three of those principles to our language. This language from one location, that would help your position on that if it were in your policy. No, it does not, Your Honor, because the location of the injuries did differ. The claimants were injured in different locations, different homes. One was on, I think, a summer camp or a summer vacation type situation, so there were some different locations at issue in our case. But because the policy language here does not specify that only the abuse that occurs at one location will be batched together, the abuse that occurs at different locations can be batched together as long as the exposure is to the same general type of harm. And again, it says general. It doesn't say specific. We have to honor that language. Here, the general harm that these claimants were exposed to was Michael Jensen. Do we have to pick an approach in terms of determining occurrences? I think, if I understand it, you're just saying, well, there's an ambiguity, so construe it in our favor, and we don't have to guess what the Utah courts might do? That's right, Your Honor. The Utah Supreme Court requires the process. The Utah Supreme Court requires the consideration of the church's definition to determine whether it is at least plausible. It does not have to be the best interpretation. It does not have to be the most reasonable interpretation. In fact, this court could find that the district courts or H-E Butts or the insurer's definition is, in fact, more reasonable, but as long as ours is plausible, it controls. That's Utah law that the court did not follow in this case. And so, no, this court does not have to choose a definition that would apply in all cases. It just has to decide whether ours is plausible here. Is plausibility a heads-on, wind-tails-you-lose sort of thing, which is, of course, how you define occurrence matters, which side you want to be on, depending on how much each claim is and what the total coverage is. And so there may be a different case where the church comes in and takes a different position and says, hey, that one's plausible, too. And so you win every time. That's exactly right, Your Honor. That could happen. And the risk of inconsistency in that regard is on the insurer under Utah law. So the insurer has the obligation to draft policy language that would prevent that, to specify when it wants the occurrences to be defined in terms of each separate claimant. And in fact, sometimes policy language does that. Our policy language doesn't here. So they have to define their policy clearly. To do it any other way would put the burden of the inconsistency on the insured and allow the insurer to benefit from it, because insurers do the same thing. They use this language differently, depending on whether it means they're going to have to pay multiple limits or whether they get to receive multiple retentions or deductibles. Both sides will take full advantage, but should we? Should we just say, here's what we think this means, rain or sunshine? No, Your Honor, unless you find that what you think it means is the only reasonable interpretation. The court under Utah Supreme Court authority is bound to apply the only reasonable interpretation if it finds one. But what I would suggest to you here is that based on the plain language, based on what the legion of cases that we've cited have said in support, that there's ample support in the language and the law for the plausibility of the Church's interpretation here. And again, inconsistency has to fall at the feet of the insurer. They're the ones with the ability to draft the policy language. They're the ones with the ability to fix it if they don't like it. And again, to not give the insurer the benefit of the doubt in that case is to give the benefit of the doubt to the insurer. And that's in fact what the court did in this case. I think it's helpful to read a quote from the decision. It says, I want to note that the court below did find sort of as an afterthought at the end of the decision that the definitions of occurrence were not ambiguous, but it did not do so because it found the Church's interpretation was unreasonable. It didn't make that finding. Instead, it found there was no ambiguity because it thought that finding an ambiguity and following Utah law to construe that ambiguity in favor of the insured would, quote, shift in meaning between insureds who wish to avoid the application of multiple retained limits and insureds who wish to avoid the application of a liability cap. The court was right about that. The meaning does shift. And that is exactly the court's error. In that instance, the court has to find an ambiguity and construe it in our favor. It did not do so. And that in and of itself is reversible. Understanding ambiguity and plausibility and so forth, are there, and it's an eerie guess here, right? Yes. By the district court, Utah judge, is in making that eerie guess, can the court, did the court have anything from the Utah Supreme Court or even appellate court that says heads you win, tails you lose? Or heads I win, tails you lose? Do you mean that is there anything in the Utah Supreme Court or an appellate court that defines occurrence in the situation that we face here where there's multiple sexual abuse victims by the same abuser? I'm not that specific. I'm saying that you have an insured and you have something like this variable occurrence where it could go either way to benefit the insured or the insurer. And the Utah Supreme Court has said, well, you better write the policy better than that or you're just going to lose every time. I don't think there's a case on the definition of occurrence in the Utah Supreme Court that says that. But the SALA case is exactly that case in a different definition that it's trying to  It says that the meaning here could vary, excuse me, the SANT case. It says the meaning here could vary, there's support on both sides, and we're going to construe it in favor of the insured because we have to. And with that, your honors, if there are no further questions, I'll save my remaining time. Thank you. Good morning, your honors. May it please the court. My name is Mark Subcheck and I'm here on behalf of Appley National Union Fire Insurance Company of Pittsburgh, Pennsylvania. I'll be splitting my time equally with counsel for Ace Insurance Company. The district court correctly held that Jensen's abuse and the church's failure to stop it constituted multiple occurrences here. And the district court adopted a test, it predicted the Utah Supreme Court would adopt a cause test, which is the majority position throughout the country, that focused on the event giving rise to the liability. Per the district court, this accounts for both the insured's negligence and the specific act of abuse as absent either condition, the insured would not be found liable and there would be no loss under the policy. When you apply that test here, it's clear that there are multiple occurrences. The district court said liability depends both on Jensen's specific acts and the church's knowledge and inaction about those acts. Jensen abused multiple children at separate times and in separate places, which frankly alone would constitute separate occurrences under some versions of the cause test. And I'm thinking of the H-U-Butt case. Counsel, can I interrupt you? I kind of want to go back quickly to something that Ms. Crew mentioned just briefly towards the end of her discussion, which is the finding that the district court made about ambiguity. It didn't really say this is ambiguous. It said it wasn't, but it did, as she recounted, indicate that it didn't want to find an ambiguity because that would shift the meaning. And isn't that exactly the reason why we should reverse this? Because if there is a shift in meaning, which certainly there could be, there could be a lot of shifts that could benefit either side. But the shift in meaning shouldn't go against, because of ambiguity, shouldn't go against the insurer. And Utah law does say that. And it does seem to me that the district court said, I don't want to shift the meaning in favor of the insurer. Well, I would say that the district court clearly stated that it was an unambiguous policy provision. But it qualified it with that. I think it did qualify it by saying, I don't I don't want to find an ambiguity because here's what's going to happen. And let's be honest, both sides are going to benefit from shifts in how they read this language and how they interpret this language in future cases. But those shifts need to be construed against, the potential shifts need to be construed against the insured. Only if the policy is ambiguous. And the policy here is not. Well, but I'm saying the district court seemed to qualify the ambiguity. And I don't know if I would agree that it qualified it so much as it was concerned about the potential kind of heads I win, tails you lose circumstance that can arise. Well, the other mistake I see the district court made is that it did not ever indicate that the position of the church was not reasonable as far as this interpretation. And why isn't it reasonable? And wasn't that a problem for the church not to address whether the church's position was reasonable? I think the district court's entire opinion addresses why the church's position. I didn't see that. It doesn't say it explicitly. It goes through all the cases, which are all over the place, all over the place. And it arrives at a conclusion. But that's a whole different ballgame than saying the church's position they're taking here today isn't reasonable. It's a long explanation for why you reject it, but it doesn't say it's not reasonable. And that's important here. Well, I think Your Honor has pointed out that the district court does ultimately get to a place where it rejects. It certainly knew. Rejecting is fine, but you've got to also find that it's not reasonable. If, you know, and that's a problem. I think it did find it was not reasonable. I just don't think it necessarily used the word. There might not be magic words in the opinion. Why isn't it reasonable? Considering there's plenty of case law to support it, and you can certainly interpret the language of the statute to support it. Because if you look. Why isn't that reasonable? If you look at the liability, if you look at the liability event test, kind of the test that looks at the occurrence from the insured's point of view, and you go down and you look at the facts you have, and we go through these, and the church does not rebut these  Jensen's was charged with a felony in 2004 over sexual misconduct. He abused a victim in 2006, 2007 with victim PC. Well, I understand all that, but the occurrence, as you seem to recognize, has to be more than just Jensen's act. It has to involve the church's ongoing failure to act, ongoing, and it was years and years. It doesn't have to be an ongoing failure. It has to be a failure, and there were multiple failures here by the church. The church was told. But that's a disputed fact, isn't it, to Judge Moritz's point? Those are disputed facts. The judge in the district court opinion, I mean, cited references to the complaint. These facts that the district court used to rely on, even if we adopted the process that the district court employed, the judge says, well, you know, facts matter, and we're going to look at the facts, but the facts that the judge relied on were all disputed. The facts that the judge relied on were the allegations in the complaint and the intent testimony. Those are allegations in a complaint that are a separate case. He looked at the full record available that the church had when it settled. When the church settled, it had to make a decision to settle or to go to trial. In this particular case, it was either slightly before trial or during trial. I can't recall, actually. But those were the facts available at the time when the church decided to settle, and those are the facts that we have to deal with in terms of trying to figure out and trying to determine and determining that there's multiple occurrences here. I guess my question is, when we talk about occurrence, we're not just talking about the facts that you indicate are undisputed, which are that this individual committed this sexual abuse on so many occasions against so many victims. They don't seem to dispute those facts. And I'm not sure they really dispute their own actions. What I'm saying is the word occurrence and in interpreting the word occurrence, certainly you have to consider not just Mr. Jensen's acts, but the church's acts or failure to act have to be considered in determining what the occurrence was, because this is the liability is because of the church's failure. Many cases. I apologize. So when you read that definition of an occurrence, meaning an accident, including continuous or repeated exposure to substantially the same general harmful conditions, those conditions include the church's actions. That logic can take it to not inaction, right? Doesn't it? I'm sorry. Don't the term the same general harmful conditions are encompassing the church's actions here? No, they were different harmful conditions, multiple, but it involved the church's actions. It involved the church's inactions. Yeah. OK. And it's failure to respond. And so the question is whether the church's actions essentially to me were essentially were substantially the same, right? Not so much whether the assaults were the same, but whether the church's actions or inaction was essentially the same over a continued period of time. Well, I think you're correct in focusing. That's the occurrence. I think your honor is correct in focusing on the liability event triggering test. Right. That's what this is all about. The problem we have is this this policy doesn't seem to be at all geared towards this situation. I mean, these these words like accident and and occurrence don't fit. And the Lee case is they just don't fit. And it's it's a huge struggle, but it also lends to the ambiguity of all this and is what makes potentially the church's argument reasonable. Well, I was trying to fit a square peg here in a round hole and it just it's really hard to do. But I would simply end by by stating that as my time is out and so my colleague may argue that the district court did yeoman's work here, I think, in coming to a fair, reasonable test on unambiguous policy language. But was there? That's not really the question. It's really for me is if it was ambiguous, was the church's position also reasonable despite him? Ultimately, the court ultimately rejecting and National Union would say no. The church's position is not. And you have to really kind of rely on the fact that it's not ambiguous. Don't you? Well, it's funny. You don't have to talk about the church's position or whether it's reasonable. The church doesn't actually take any kind of they don't point out any linguistic problems with the definition of occurrence. Really, they're they're just kind of asking for a different result under the same language. Well, they certainly seem to think that you've added words to the statute. Well, to the to the provision, you mean, I mean, to the provision. I'm sorry to the yeah, to the occurrence definition. Well, I would I would simply point to our briefs and say that we have interpreted it as it's written. So how do you factor the argument, write a better policy? It's always an argument and you can know you can write a part and it's always it's always an argument you can't a policy can't foresee every potential circumstance you can you you can't predict every potential loss. You can just write a policy that you can write. OK, thank you. Any further questions? We'll turn it over to counsel. Good morning, your honors, Chris Wadley for I think it's still morning for a property and casualty insurance company, I want to address the ambiguity argument because I do think that the church's interpretation is unreasonable. I think it's both textually and legally unreasonable when you look at the structure of these policies and the structure of the policies is that they cover damages that the insured becomes legally obligated to pay because of bodily injury caused by an occurrence and an occurrence is the accident, including continuous or repeated exposure to substantially the same harmful conditions. So in that sense, you're looking at what is the accident that caused the bodily injury? And here, the accident that caused the bodily injury is the fact that Mr. Jensen perpetrated these acts of abuse at different times, different places and under different circumstances. And so usually think about this as a car accident case, right? Usually there's some negligence, failure to keep a proper lookout, speeding. The insured does something that's negligent. That negligence results in an accident, a collision, something of that nature that causes bodily injury. So there is a separation there between the negligence, failure to keep a lookout, failure to supervise, negligent retention and the incident, the injury producing event, which is the accident. And here, the injury producing events were multiple and they were different times, different places, different circumstances. And so that's why you have multiple occurrences. And therein lies the problem. I think that's how your argument has combined the whole the whole concept, as you should, of the the acts against the minors. But you but you couple that, as you say in your brief, you use the word couple. You have to couple that with the church's church's acts and the church's leaderships, as you say, multiple acts of negligence. And so you argue it constituted multiple occurrence. But that's the facts are definitely not clear that there were multiple acts of negligence by the church here. And that's the problem. And that's what makes their argument reasonable. It's, you know, it's the church's acts that we're talking about here as well. And you can't just look to these individual acts of abuse. You've got to consider what was the church doing during this time? And there's certainly an argument to be made that the church's actions were continuous or substantially the same. They're inaction. There's an argument to be made there. And it's well, I mean, is that a reasonable argument to me? I mean, I don't I don't think it's a reasonable argument. And so that was my textual argument as to why it's not reasonable. There's also a legal argument as to why it's not reasonable. And when we talk about, oh, let's focus on the church's negligence, it kind of harkens back to Judge Cardozo's statement in Paul's graph that negligence in the air, so to speak, is is is meaningless. Negligence doesn't give rise to action and action, a cause of action unless and until there's been an invasion in somebody's personal rights. And the invasion that occurred in this case, none of these children were exposed to the church's negligence. They were exposed to Mr. Jensen's sexual misconduct, which happened at varying different times, varying different places. And so, you know, there's one thing that the church does here and they do a little bit of a sleight of hand in their introduction. Right. They say and I'm reading this third paragraph of their introduction. They say national unions and ACES policies both state that continuous or repeated acts of a similar nature are treated as a single occurrence. Well, the policy doesn't refer to acts of a similar nature. It refers to conditions. And so it's the conditions to which the children were exposed. And in this case, the children were not exposed to whatever negligence, remote negligence the church engaged in. The children were exposed at different times and places to Mr. Jensen. And the accident from the church's standpoint, the occurrence from the church's standpoint, the unexpected and unintended event that led to these children's injuries was the fact that they were abused by Mr. Jensen. So that's an accident from their standpoint because they didn't expect or intend those injuries to happen. Nonetheless, those are separate occurrences, separate accidents. And that is the only reasonable interpretation. The only reason they're liable for that accident is because of their own negligent acts. Sure. And I think that you can't ignore that, that part of the equation. And that's what I'm talking about. I understand that. And I think I think the district court hit the nail on the head when the district court made the comparison to the car crash analogy. And it stated under the church's interpretation of occurrence, Mr. Jensen is akin to a bad driver whom the church negligently hired and who injured multiple people in a single crash. But Mr. Jensen's years long pattern of abuse of multiple children and the warnings the church received about that abuse is more analogous to a bad driver who was negligently allowed back on the road over and over despite repeated accidents. So these are separate accidents. They're separate occurrences. It's not a single occurrence or accident that resulted in multiple claimant injuries. It's separate accidents, separate car crashes, separate encounters with Mr. Jensen. These are separate occurrences. And that is the only reasonable interpretation of these policies. But baked into that, don't we, implicit in your argument is that you're asking us to pick one of the various tests that have been employed for determining occurrence. Is that right? I mean, yes, in a sense. I mean, to Judge Phillips's point, I think that, you know, the court's job is to interpret the meaning of the language. And part of that is, you know, interpreting and picking a test that applies to what constitutes the occurrence based on the text of the policies. But isn't there a separate directive that in interpreting the policy, we're supposed to construe it in a way that favors the insured rather than trying to sort out whether we're going to pick the effects test or the cause test or any of those things isn't what we're supposed to do to interpret the policy in ambiguous language in a way that accords and comports with the insured's interests? Only if the policy language is ambiguous, which we don't think it is in this in this case. You've covered that ground. So for those reasons, we would ask the panel to affirm. Thank you. I heard in Apelli's argument today for the very first time because it's not in the briefing that they consider the church's definition to be unreasonable. I think they recognize they have to say that in order to prevail and avoid a reversal here. But I want to point out that that's not what Ace told the court in the District of New Jersey in the Diocese of Trenton case just two years ago. In that case, which is that 2024 Westlaw 3159936, Ace argued on a motion that all 212 claims of child sex abuse against the insured Diocese of Trenton should be treated as a single occurrence because, quote, the complaint alleges facts from which the court can plausibly infer a longstanding institutional policy within the diocese to tolerate and cover up the sexual abuse of minors. And that, quote, the diocese's policies of tolerating and covering up sexual abuse was approximate, uninterrupted and continuing cause of the underlying victims injuries. It told that to the district court in New Jersey just two years ago, despite the fact that there was intervening intentional conduct of the third party priests that, you know, potentially injured the claimants. This is the exact shift in position that the contra preferentum rule that is routinely and religiously applied under Utah law is designed to prevent. And with that, I would ask that the court reverse the district court on the number of occurrences issue here. Thank you. Thank you, counsel. Thank you for your helpful arguments and brief. The case is submitted. Counsel are excused.